<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOHN T.C. YEH,                          :
                                        : Civil Action No. 12-7856 (MAS)
                    Petitioner,         :
                                        :
          v.                            :       **OPINION**
                                        :
UNITED STATES,                          :
                                        :
                    Respondent.         :


**SHIPP**, District Judge

 Before the Court is Petitioner John T.C. Yeh's ("Petitioner" or "Yeh") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons stated below, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

 On November 18, 2009, a federal grand jury returned a six-count Indictment against Yeh and four other defendants (Joseph Yeh, Anthony Mowl, Donald Tropp and Viable Communications, Inc.), charging them with conspiracy to defraud the United States and to cause the submission of false claims, in violation of 18 U.S.C. § 371 (Count 1); submission of false claims, in violation of 18 U.S.C. §§ 287 and 2 (Counts 2, 3); conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349 (Count 4); and mail fraud, in violation of 18 U.S.C. § 1341 and 2 (Counts 5, 6). (ECF No. 3, Pet. Mem. at 3; ECF No. 3-1, Indictment.) The Indictment alleged that, from July 2006 through July 2009, Yeh, through his company Viable Communications and

its subcontracted call centers throughout the U.S., would pay friends and acquaintances to make fraudulent Video Relay Service ("VRS") calls for the sole purpose of generating illegitimate VRS minutes.  During this same time period, Yeh and his co-defendants submitted claims for these sham VRS calls to the National Exchange Carrier Association ("NECA") for reimbursement from the Telecommunications Relay Services ("TRS")[1] Fund in an amount totaling about $55 million.  (ECF No. 3-1, Exhibit A - Indictment at ¶¶ 1-30.)

On October 28, 2010, Yeh appeared before the Honorable Joel A. Pisano, U.S.D.J., for a change of plea hearing.  (ECF No. 3-2, Ex. B - Plea Transcript.)  Yeh entered a guilty plea pursuant to a plea agreement he made with the Government.  Specifically, Yeh pled guilty to Count 4 of the Indictment, conspiracy to commit mail fraud.  (ECF No. 3-3, Ex. C – Plea Agreement.)  Yeh's plea was preceded by an Application for Permission to Enter Plea of Guilty, which Yeh had completed with his counsel, Paul Kemp, Esq.  (ECF No. 3-4, Ex. D – Plea Application.)  At the conclusion of the change of plea hearing, Judge Pisano accepted Yeh's guilty plea as to Count 4 of the Indictment.

On November 30, 2011, Yeh was sentenced to 108 months in prison with three years supervised release, and he was required to make restitution in the amount of $20 million. (*United States v. Yeh*, et al., Case #: 3:09-cr-00856-JAP at ECF No. 81 – Sentencing Hearing; ECF No. 85 – Judgment.)  An amended judgment of conviction was entered on December 12,

---

[1] The TRS  was a federal fund designed to provide free communications services to persons with hearing disabilities.  The TRS was funded by fees assessed by the Federal Communications Commission ("FCC") on all common carriers providing interstate telecommunications services. VRS providers were eligible to be reimbursed from the TRS Fund for legitimate VRS services. NECA was a non-profit association that administered the TRS Fund.  (ECF No. 3-1, Indictment at ¶¶ 1-6.)

2011, which did not substantively change the sentence and restitution imposed. (*Id.* at ECF No. 92.)

On December 26, 2012, Yeh filed this motion pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Yeh asserts that his guilty plea was involuntary, unintelligent and unknowing because neither the Court or Yeh's counsel informed Yeh of the nature and elements of the conspiracy to commit mail fraud offense to which he pled guilty. He further claims that Kemp rendered ineffective assistance of counsel because he failed to have the Court address the nature and elements of the charge to which Yeh was pleading guilty. (ECF No. 3, Pet. mem. at 5.)

On April 29, 2013, the Government filed a response to Yeh's § 2255 motion. (ECF No. 6, Answer.) The Government contends that Yeh waived his right to seek relief under § 2255 because the Plea Agreement contains an express § 2255 waiver provision. The Government also argues that counsel was not ineffective because the record shows that counsel reviewed the nature of the charge with Yeh and that the nature of the offense was referenced at the plea hearing. (*Id.* at 4-12.)

On May 10, 2013, Yeh filed a reply, arguing that the § 2255 waiver provision in the Plea Agreement was limited to challenges as to the length and computation of his sentence, and not as to his right to challenge the voluntariness of his guilty plea. Yeh also argues that the guilty plea colloquy conducted by the Court at the change of plea hearing did not address the collateral attack waiver provisions of the Plea Agreement. (ECF No. 8.)

This Court declines to reach the issue of the § 2255 waiver provision of the Plea Agreement, as raised by the Government, because the Court has determined, as discussed below, that Yeh's guilty plea was made knowingly, intelligently and voluntarily. Suffice it to say, however, that Yeh correctly points out that the collateral attack waiver provision was not

3

specifically addressed at the change of plea hearing as required under Fed.R.Crim.P. 11(b)(1)(N). Nevertheless, the absence of any specific discussion of this provision in the plea colloquy is not relevant in this Court's ultimate determination that Yeh's guilty plea was knowing and voluntary.

## LEGAL STANDARD

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in U.S. v. Travillion*, --- F.3d ----, 2014 WL 3029837, *2 (3d Cir. July 7, 2014).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v.*

4

*United States*, No. 11–4646, 2013 WL 4538293, at * 9 (D.N. J. Aug. 26, 2013) (Simandle, J.)

(citing *Booth*, 432 F.3d at 545–46).

## DISCUSSION

Yeh asserts that his guilty plea was invalid because it was involuntary and unknowing

based on ineffectiveness of counsel in failing to explain or have the Court explain the nature and

elements of the offense to which Yeh was pleading guilty. Yeh maintains that he would not have

pled guilty to the charge of conspiracy to commit mail fraud:

> had he known that this offense required him to "knowingly devise[] a scheme to defraud
> or obtain money by materially false representations (or willfully participate[] in such a
> scheme with knowledge of its fraudulent nature)" and "act with the intent to defraud,"
> which are two of the three elements of mail fraud. The elements of conspiracy to commit
> mail fraud were not explained to, or defined for, Mr. Yeh at the change of plea hearing
> and were not mentioned in either the guilty plea agreement or the Application. In light of
> Mr. Yeh's deafness and inability to speak, and his difficulty in understanding complex
> legal concepts because of his disability and his less-than-full command of the English
> language, it was doubly incumbent upon the Court and counsel to explain the nature of
> conspiracy to commit mail fraud to Mr. Yeh in order to ensure that he was entering his
> plea knowingly, intelligently and voluntarily. The failure of the Court and counsel to
> define the nature and the elements of conspiracy to commit mail fraud to Mr. Yeh
> requires the Court to vacate the judgement [sic] and order a trial.

(ECF No. 3, Pet. Mem. at 5.)

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall

enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. VI. In order to

succeed on his claims alleging ineffectiveness of counsel, Yeh must satisfy the two prong test of

deficient performance and resulting prejudice as set forth in *Strickland v. Washington*, 466 U.S.

668 (1984). *See also Premo v. Moore*, --- U.S. ----, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011)

(holding that "[t]o establish ineffective assistance of counsel, a defendant must show both

deficient performance by counsel and prejudice"). First, Yeh must show that his counsel's

performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an

objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id.* at 687–688. Yeh must then show that the deficient performance prejudiced the defense. In other words, Yeh must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 788 (quoting *Strickland*, 466 U.S., at 690) (internal citations omitted). In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland* 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* at 693.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance

6

of counsel." Thus, "[u]nder *Hill*, a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of such a plea by showing that counsel's performance fell beneath the standard articulated in *Strickland* ..." *United States v. Ordaz*, 111 F. App'x 128, 131–132 (3d Cir. 2004). To satisfy the "prejudice" requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Missouri v. Frye*, --- U.S. ----, 132 S.Ct. 1399, 1409 (2012) (citing *Hill*, 474 U.S. at 59). The Third Circuit has stated "that a defendant 'must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial.'" *Rice v. Wynder*, 346 F. App'x 890, 893 (3d Cir. 2009) (citing *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995).

As stated above, Yeh contends that his counsel was ineffective for failing to explain or to have the Court explain the nature and elements of the offense, conspiracy to commit mail fraud, at or before the plea hearing, thus rendering his guilty plea unknowing and involuntary. For purposes of the conspiracy to commit mail fraud charge at issue here, this Court looks to the substantive elements of mail fraud under 18 U.S.C. § 1341, which are "the use of the mails— whether the United States Postal Service or a private carrier—in furtherance of the fraudulent scheme," and "culpable participation by the defendant, that is, participation by the defendant with specific intent to defraud." *United States v. Dobson*, 419 F.3d 231, 238 (3d Cir. 2005); *see also United States v. Kemp*, 500 F.3d 257, 279 (3d Cir. 2007) (holding that mail fraud elements include "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails ... in furtherance of the scheme") (quoting *United States v. Antico*, 275 F.3d 245, 261 (3d Cir.2001)). Count 4 of the Indictment, to which Yeh pled guilty, charged Yeh with conspiracy to commit mail fraud in

violation of 18 U.S.C. § 1349.  This statute defines such offense as "[a]ny person who attempts or conspires to commit any offense under this chapter ...," such as substantive mail fraud under § 1341.

To determine whether a guilty plea is knowing and voluntary, the district court must address the defendant in open court and meticulously follow the provisions for such a colloquy set forth in Rule 11 of the Federal Rules of Criminal Procedure.  *United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008).  Ultimately, a guilty plea is knowing and voluntary if it satisfies the three core concerns underlying Rule 11, which are that: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.  *Id.*

More specifically, Fed.R.Crim.P. 11(b)(1) provides:

Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or, having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

8

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Rule 11(b) further states that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed.R.Crim.P. 11(b)(2).

Here, the record and the October 28, 2010 change of plea hearing shows that Judge Pisano scrupulously complied with the requirements under Fed.R.Crim.P. 11(b) by conducting an exhaustive colloquy of Yeh concerning the rights he was abandoning upon his guilty plea. The colloquy confirmed that Yeh was competent and had not consumed any drugs, medication or alcohol before the hearing. (ECF No. 3-2, Plea Tr. at 5:14-6:19; 7:16-8:4.) Yeh further testified that he understood the consequences of a guilty plea and that he had sufficient time to discuss his case with counsel and that he was satisfied with his counsel's representation. (*Id.*, 6:20-7:15;

9

13:4-9.) Yeh also affirmed that he understood the specific rights he was waiving by a guilty plea, namely, the right to be indicted by a grand jury, the right to a jury trial, that he was presumed innocent, and that the Government had the complete burden to prove Yeh guilty beyond a reasonable doubt, and that Yeh had the right to call witnesses and produce evidence in his defense. Yeh likewise acknowledged the role his counsel could take in a jury trial, such as confronting Government witnesses, which Yeh was relinquishing by a guilty plea. (*Id.*, 13:10-23.) Yeh also confirmed that he was entering a guilty plea without any threats, coercion or promises to do so. (*Id.*, 12:20-13:7.)

It is also clear from the Court's colloquy that Yeh understood the nature of the charge to which he was pleading guilty. First, Judge Pisano informed Yeh that the charge at issue was limited to Count 4 of the Indictment, conspiracy to commit mail fraud. (*Id.*, 11:1-6.) Second, Yeh stated under oath at his change of plea hearing that he had reviewed the charge against him, as set forth in the Plea Agreement and the Plea Application. (*Id.*, 8:7-9:6; 9:11-11:5.) This Court observes that the Plea Agreement sets forth the charge to which Yeh was pleading guilty as Count Four of the Indictment, namely, conspiracy to commit mail fraud, and the Plea Agreement contains a brief factual basis underlying that charge. (ECF No. 3-3, Ex. C – Plea Agreement at 1.) Moreover, in his Plea Application, Yeh affirms that he had read the Indictment and discussed the charge with his lawyer. He further confirms that he understood the substance of the charge against him was a conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. (ECF No. 3-4, Ex. D – Plea Application at ¶ 7.) The Indictment, which Yeh avers that he had read, and which he acknowledges that counsel had explained to him, sets forth the nature and elements of the charge against Yeh in Count 4 of the Indictment. (ECF No. 3-1, Ex. A – Indictment at Count 4.)

The Plea Application also contains the certification of Yeh's counsel, Paul F. Kemp, Esq., who verifies that he read and explained to Yeh the charge against him in the Indictment, which sets forth the nature and elements of the conspiracy to commit mail fraud charge. (ECF No. 3-4, Ex. D - Plea App. at 8, ¶ 2.)

Finally, the Government set forth the factual basis for Yeh's guilty plea and Yeh allocuted to each factual element of the charge against him. (ECF No. 3-1, Ex. A – Plea Tr. at 20:7-21:21.)   At the conclusion of this meticulous colloquy and allocution, Judge Pisano found Yeh's guilty plea to be knowing and voluntary. (*Id.*, 22:4-8.)

Thus, having carefully reviewed the record in this case, as set forth above, this Court concludes that the plea colloquy demonstrates full compliance with Fed.R.Crim.P. 11 requirements.  The record makes evident that Yeh's guilty plea was entered freely without coercion, threats or promises; that he understood the nature of the charge against him, and that Yeh was informed and understood the consequences of his guilty plea, namely, the rights he was waiving upon entering a guilty plea.  Indeed, the sophistication of the offense, which Yeh masterminded, and his level of cooperation with the Government, belies Yeh's facetious and belated argument that he was not informed of the nature and elements of the conspiracy to commit mail fraud offense.  Moreover, Yeh received the benefit of a well-negotiated plea agreement that resulted in a more favorable sentence than that recommended by the Government. Based on these factors, it is highly implausible that Yeh would have chosen to go to trial if the precise language of the mail fraud statute had been read to him at the change of plea hearing. That language was set forth in the Indictment, which had been read and explained to Yeh by counsel before the hearing, and the factual basis for the elements of the conspiracy to commit mail fraud charge had been provided by the Government at the change of plea hearing, and Yeh

expressly allocuted as to each element. (*Id.*, Plea Tr. at 20:7-21:21.)   Consequently, this Court is satisfied that Yeh entered a knowing, intelligent and voluntary guilty plea.

Finally, as to Yeh's claim of ineffective assistance of counsel, this Court finds no deficient performance by Kemp in the plea process.   The record confirms that Kemp informed Yeh as to the nature and elements of the charge to which Yeh was pleading, and Yeh affirmed Kemp's representation in this regard.   Therefore, Yeh's § 2255 motion is denied for complete lack of merit.

## CERTIFICATE OF APPEALABILITY

For the reasons discussed above, this Court denies a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2).   *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## CONCLUSION

For the reasons set forth above, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.   An appropriate Order follows.



MICHAEL A. SHIPP
United State District Judge